

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-26-00152-CV

---

## IN THE INTEREST OF S.P. AND K.D.C.L., CHILDREN

---

On Appeal from the 100th District Court
Childress County, Texas
Trial Court No. 11674, Honorable Dale Rabe, Jr., Presiding

---

July 24, 2026

## MEMORANDUM OPINION

Before PARKER, C.J., and YARBROUGH and PRATT, JJ.

Appellants, Father J.P. and Mother H.W. a/k/a H.L., appeal from the trial court's order terminating their parental rights to S.P. and K.D.C.L., born in 2024 and 2025, respectively.[1]  By a sole issue, Father asserts the evidence is insufficient to support the trial court's finding that termination was in his children's best interests.[2]  Represented by separate appellate counsel, Mother presents two issues challenging the legal and factual

---

[1] To protect the privacy of the parties involved, we refer to them by their initials.  *See* TEX. FAM. CODE § 109.002(d).  *See also* TEX. R. APP. P. 9.8(b).

[2] In his argument regarding the trial court's best-interest finding, Father references the trial court's finding that he violated section 161.001(b)(1)(E) as being erroneous.  He does not, however, challenge that predicate ground.

sufficiency of the evidence to support termination under section 161.001(b)(1)(D) and (N). We affirm as to Father, and affirm, as modified, as to Mother.

## BACKGROUND

On September 3, 2024, Appellee, the Department of Family and Protective Services, received a report alleging neglectful supervision of S.P. by Father and Mother. At the time, Mother was living with a friend in Childress. Father committed domestic violence against Mother, who was pregnant with K.D.C.L. at that time.[3] Father testified he was holding S.P. when he assaulted Mother. He was charged with assault of a pregnant person and placed on community supervision, which was later revoked resulting in his incarceration. Mother had not had her mental health evaluated and was depressed to the point of remaining in bed for days at a time. She was unwilling to place S.P. in a Parent-Child Safety Placement while she worked on her mental health and the conditions of the home. The Department alleged the condition of the home presented a safety hazard to S.P. Mother's case was referred to Family Based Safety Services and a caseworker was assigned.

The caseworker and an investigator visited Mother and observed S.P. sitting in his walker with limited mobility due to the clutter in the home. He was in a dirty diaper. The caseworker observed an unsafe sleeping area for the child with choking hazards and a dirty sheet in his playpen. Mother had a prior history of methamphetamine use and was smoking Delta-8, a cannabinoid, and vaping. She was advised not to smoke around the

---

[3] Mother has been pregnant nine times, was currently expecting to deliver her fifth child, and had other children removed due to methamphetamine use.

2

child.  The caseworker and investigator helped Mother clean the home and throw out the trash.  They provided her with a pamphlet for keeping her child safe.

About a month after K.D.C.L.'s birth, in February 2025, the children were removed from the home and placed with foster parents.  Mother completed some of her services but did not follow through on most, including her mental health treatment.  On a follow-up visit, the caseworker observed little improvement in the conditions of the home—it was still dirty and cluttered, and the animals had fleas.

In October 2025, Mother moved to Marshall, Texas, for health issues and because her boyfriend found a job there.  She also found employment but did not participate in any other services.[4]  Although Mother was assigned a courtesy caseworker, the Department was unable to ascertain the conditions of the home in Marshall.  In December 2025, Mother moved to Indiana with her boyfriend, and they moved in with his father.  The Department was again unable to determine the conditions of her living environment.  Mother's services were interrupted because the Department did not contract with out-of-state providers.

Following a hearing at which Mother did not testify, the trial court signed an order terminating Father's parental rights for violations of subsection (E) and Mother's parental rights for violations of subsections (D) and (N).  TEX. FAM. CODE § 161.001(b)(1)(D), (E), & (N).  The court also found termination was in the children's best interests. § 161.001(b)(2).

---

[4] The caseworker testified Mother would find jobs but never held them for very long.

3

**APPLICABLE LAW**

The Texas Family Code permits a court to terminate the relationship between a parent and a child if the Department establishes at least one of the predicate grounds under section 161.001(b)(1) of the Code and that termination of that relationship is in the best interest of the child. *See* § 161.001(b)(1), (2). *See also In re R.J.G.*, 681 S.W.3d 370, 377 (Tex. 2023); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). *See also* § 161.206(a). It is an unforgiving standard that requires a degree of proof that elicits "a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007; *In re K.N.*, __ S.W.3d __, No. 24-0881, 2026 Tex. LEXIS 535, at *20 (Tex. June 5, 2026).

Only one statutory ground is needed to support termination though the trial court must also find that termination is in a child's best interest. *In re K.C.B.*, 280 S.W.3d 888, 894–95 (Tex. App.—Amarillo 2009, pet. denied). In reviewing a termination proceeding, the standard for sufficiency of the evidence is that discussed in *In re K.M.L.*, 443 S.W.3d 101, 112–13 (Tex. 2014). In reviewing a best-interest finding, appellate courts consider, among other evidence, the factors set forth in *Holley*, 544 S.W.2d at 371–72.

STANDARD OF REVIEW

Termination proceedings are strictly construed in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).[5]

## FATHER'S CHALLENGE TO BEST-INTEREST FINDING

Father argues the trial court committed reversible error in finding clear and convincing evidence to support a finding it was in his children's best interests to terminate his parental rights. We disagree.

Father contends his parental rights were terminated due to his temporary incarceration. He argues a "temporarily incarcerated parent is better than no parent." Stable foster placement, he posits, does not justify termination of parental rights. He accuses the Department of rushing termination proceedings so his children could be adopted. He asserts the Department used "pre-textual reasons to help people adopt children who are loved and can be cared for by a biological parent."

This Court acknowledges that incarceration alone does not support a termination order. *Tex. Dept of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (noting imprisonment alone does not constitute endangering conduct); *In re Caballero*, No. 07-00-00278-CV, 2001 Tex. App. LEXIS 1688, at *8 (Tex. App.—Amarillo March 14, 2001,

---

[5] The Texas Constitution was amended in 2025 to acknowledge parental rights and responsibilities. TEX. CONST. art. 1, § 37. It affirms a parent's responsibility to nurture and protect a child and affirms a parent as the primary decision maker for the child's upbringing.

5

pet. denied) (mem. op.). However, an unchallenged finding of a predicate ground, here subsection (E), is binding and supports a termination order and a best-interest determination. *In re E.A.F.*, 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re D.M.*, No. 07-25-00235-CV, 2025 Tex. App. LEXIS 8255, at *7 (Tex. App.—Amarillo Oct. 27, 2025, no pet.) (mem. op.).

Father was incarcerated for assaulting Mother while she was pregnant with his younger child. He had not completed the Batterer's Intervention Prevention Program, although the caseworker testified services were not necessarily available while Father was incarcerated.

Father testified "I absolutely love my kids." But he admitted he had never met his younger child because he was born while he was incarcerated. He had not seen his older child in six to nine months. The children were too young to express their desires. Father had no plan now or in the future to meet the physical and emotional needs of his children. His anticipated release date is March 8, 2027. He did not present any evidence he could provide a stable or proposed placement for the children while incarcerated or after his release—the relatives he suggested as a support system were ruled out by the Department.

According to a caseworker, Father was a stranger to his children. The caseworker testified the children are in a stable placement, their needs are being met, they are bonded with their foster parents and are "doing great." The older child is receiving occupational and feeding therapy. The younger child, who had complications when he was born prematurely, requires medical monitoring. He has developmental delays. We conclude

6

the evidence is legally and factually sufficient to show termination of Father's parental rights is in the children's best interests. His sole issue is overruled.

**MOTHER'S CHALLENGE TO SUFFICIENCY OF THE EVIDENCE UNDER SUBSECTIONS (D) & (N)**

Mother contends the trial court erred in terminating her parental rights under subsection (D) because the evidence is insufficient to show the conditions and surroundings of the home endangered her children. We agree.

Termination under subsection (D) requires evidence that the child's living conditions pose a danger to the child's physical or emotional well-being and permits termination based on a single act or omission by the parent. *In re M.M.*, 584 S.W.3d 885, 889–90 (Tex. App.—Amarillo 2019, pet. denied). According to the caseworker, the house was dirty and cluttered. There was also evidence of cleaning supplies and medications within reach of S.P. (K.D.C.L. had not been born at the time of removal).

Mother acknowledges that unsanitary conditions may pose an endangering environment, *In re A.T.,* 406 S.W.3d 365, 371 (Tex. App.—Dallas 2013, no pet.), but argues the condition of the home was not as severe as in some cases. *See In re S.B.*, 597 S.W.3d 571, 577–78 (Tex. App.—Amarillo 2020, pet. denied) (affirming termination under subsection (D) on evidence of clutter, trash strewn about, a foul odor, cockroaches on the walls, "bugs on the clothes, the beds, they were everywhere," unsanitary kitchen for preparing meals, diapers with insects inside); *In re A.C.B.*, 198 S.W.3d 294, 299 (Tex. App.—Amarillo 2006, no pet.) (affirming termination under subsection (D) on evidence of trash, dirty diapers, feces on the wall, and the children and their clothing were dirty and smelled of urine). *In re K.N.S.*, No. 12-25-00171-CV, 2025 Tex. App. LEXIS 9906 (Tex.

App.—Texarkana Dec. 23, 2025, pet. denied) (mem. op.) (affirming termination on evidence house was "pretty dirty, kind of disgusting," broken glass and debris on the floor, house in "complete disarray," animal feces all over, and multiple bags of trash "stacked up" by the door).

Mother notes she did not exercise good judgment in having potentially hazardous materials in the child's reach. But the Department did not present any evidence that S.P., who was not yet mobile, could access any dangerous materials or had the ability to open containers containing potentially dangerous materials.

S.P. was removed from the home due to domestic violence by Father against Mother and because of Mother's mental health issues.[6] The Department did not present any evidence to show that a dirty and cluttered environment posed a danger to S.P.'s physical or emotional well-being or to her unborn child's physical or emotional well-being. *In re J.F.C.*, 96 S.W.3d at 266. Viewing the evidence in the light most favorable to the finding a trier of fact could not have formed a firm belief or conviction as to the truth of the Department's allegation. We find that termination of Mother's parental rights under subsection (D) is not supported by legally sufficient evidence.[7] We sustain Mother's challenge to the sufficiency of the evidence regarding subsection (D).

---

[6] The Department alludes to Mother's mental health issues as a reason she was unable to maintain a suitable living environment.

[7] Due process requires a heightened standard of termination of parental rights by clear and convincing evidence when a parent challenges a trial court's finding under subsection (D) or (E) because of potential consequences of termination to a different child under subsection (M). *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019).

Mother also contends the evidence is legally and factually insufficient to show all four elements required to show she constructively abandoned her children rendering termination under subsection (N) erroneous. We disagree.

Constructive abandonment occurs when (1) a child has been in the permanent or temporary managing conservatorship of the Department for not less than six months, (2) the Department has made reasonable efforts to return the child to the parent, (3) the parent has not regularly visited or maintained significant contact with the child, and (4) the parent has shown an inability to provide the child with a safe and stable environment. § 161.001(b)(1)(N). Termination under subsection (N) fails if the Department does not provide sufficient evidence of each element. *In re D.T.*, 34 S.W.3d 625, 633 (Tex. App.—Fort Worth 2000, pet. denied).

Mother concedes the first and second elements of subsection (N) are satisfied. The children were in the Department's care for the required period of time. And the Department's implementation of a family service plan satisfied a reasonable effort to return her children to her. *In re N.R.T.*, 338 S.W.3d at 674 (citing *In re M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.)).

Mother argues the third and fourth elements were not established by the Department. She disputes the Department's contention she failed to regularly visit or maintain significant contact with her children. She also asserts the evidence is insufficient to show she could not provide her children with a safe and stable environment.[8]

---

[8] Despite this contention, the focus of Mother's argument is on the element of visiting or maintaining contact with her children. She does not present any argument or authority on providing the children with a safe environment.

9

The caseworker testified Mother's virtual visits were scheduled twice a week, for 30 minutes each time.[9] In-person visits were scheduled in Lubbock and in Midland. According to the caseworker, Mother visited regularly "at first" but after she moved, her visits were not as frequent. She had one "no show" visit and cancelled some in-person visits. After moving to Indiana, she had three virtual visits before the final hearing. The caseworker acknowledged the difficulty of in-person visits after Mother moved out-of-state, but maintained virtual visits made it difficult for Mother to bond with her children. Her decision to move with her boyfriend contributed to the lack of a bond between her and her children. The caseworker characterized Mother as a "stranger" to her children because of the lack of contact between them. According to the Department, during the four months before the final hearing, Mother had no in-person visits with her children and "only attended roughly 12% of her virtual visits." *See In re M.R.*, 07-13-00440-CV, 2014 Tex. App. LEXIS 6220, at *12–13 (Tex. App.—Amarillo June 9, 2014, no pet.) (mem. op.) (noting sporadic visits are sufficient to support a finding of lack of significant contact).

The Department was also required to show Mother could not provide a safe environment for her children. A factfinder may consider a parent's lack of participation in services, lack of steady housing and employment, and missed opportunities for counseling and other programs as factors demonstrating an inability to provide a safe and stable home. *In re B.C.*, No. 07-13-00078-CV, 2013 Tex. App. LEXIS 9682, at *9 (Tex. App.—Amarillo Aug. 1, 2013, no pet.) (mem. op.). Her choice not to treat her mental health issues was a hindrance to providing a safe environment for her children. *In re E.G.*, 643 S.W.3d 236, 254 (Tex. App.—Amarillo 2022, no pet.). Her depression kept her

---

[9] All visits were supervised.

in bed for days at a time resulting in a dirty and cluttered home. She refused to temporarily place her children in a safety placement while she addressed her mental health and the condition of her home.

The caseworker testified that Mother's situation had not improved regarding her ability to provide a stable and permanent home for her children. She either lived with friends or her boyfriend's father. She had no home of her own to offer the children a safe environment and the caseworker was unsure of Mother's employment status. When asked about Mother's plan to provide a stable and permanent home for the children, the caseworker testified as follows:

> I talked to her in January, and she reached out to me, because she was wanting to see if she could relinquish her rights to a woman . . . who adopted her other child . . . . And we had a conversation after that and she – she said she just wasn't really in that position to where she could take care of the children, at this time.

Mother's inquiry into whether she could relinquish her parental rights supports a finding of constructive abandonment. She had no plan to provide her children with a safe and stable environment as required under subsection (N). *White v. Tex. Dep't of Family & Protective Services*, No. 03-08-00411-CV, 2008 Tex. App. LEXIS 9508, at *16 (Tex. App.—Austin Dec. 19, 2008, no pet.) (mem. op.). We find the evidence is legally and factually sufficient to support termination of Mother's parental rights under subsection (N). We sustain Mother's issue in part and overrule it in part.

**CONCLUSION**

The trial court's *Order of Termination* as to Father is affirmed. As to Mother, we delete paragraph 7.2.1. from the *Order of Termination* in which the trial court found sufficient evidence to support termination under subsection (D). As modified, we affirm the *Order of Termination* against Mother.

Alex Yarbrough
Justice